**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**FILED**

OCT 16 2024

U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    MISC. NO. 1 24-mc-65 |
| | ) |
| DUNBAR SCHOOL FOUNDATION and | ) |
| ROMELIA HODGES, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MOTION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

The United States of America ("United States") respectfully moves this Court to enforce

Civil Investigation Demand ("CID") No. 2023V00161-1, which the United States issued to Dunbar

Stop Foundation ("Dunbar Stop"), care of Romelia Hodges on May 20, 2024. (Ex. 1.) The CID,

which was issued in conjunction with the West Virginia Department of Health's Office of

Inspector General, seeks the production of documents and responses to interrogatories as part of

an ongoing investigation into Dunbar's potential misuse of funds that it received through grants

issued by the West Virginia Department of Health, in violation of the False Claims Act, 31 U.S.C.

§ 3729 et seq. ("the FCA"). Despite granting multiple extensions and multiple attempts to secure

Dunbar Stop's compliance with the CID for nearly four months, Dunbar Stop has refused to

produce documents or respond to the CID's interrogatories. The CID is enforceable against

Dunbar Stop because (1) Congress granted the United States Attorney General the authority to

conduct this FCA investigation; (2) the CID follows procedural requirements; and (3) the CID

seeks evidence that is relevant and material to the United States' investigation. Accordingly, the

United States moves this Court to enter an Order requiring Dunbar Stop to comply with the CID

pursuant to 31 U.S.C. § 3733(j).

## STATEMENT OF FACTS

### I.    The United States' Investigation

Dunbar Stop (Stop the Outbreak of the Pandemic) was a minority wellness organization that began operation in 2020, with Hodges as the Chief Executive Officer.  It received federal COVID-19 grant funds through West Virginia's Department of Health.  The grant funds were to be used to prioritize testing and vaccinations to minority populations in Fairmont, Morgantown, and Clarksburg during the COVID-19 pandemic.  Dunbar Stop received two grants to conduct its operations.  An initial grant budget for the time period of April 1, 2021, through June 30, 2022, was $1,197,421.  A second grant, for July 1, 2022, through May 31, 2023, was $990,000.  Dunbar Stop ceased operations in June 2023 and abandoned its headquarters located in Fairmont, West Virginia.

The United States' preliminary investigation, which has been in conjunction with the West Virginia Department of Health's Office of Inspector General, indicates that Dunbar Stop may have misused the grant funds for nepotism, excessive executive salaries and bonuses, ATM withdrawals, luxury vehicle rentals, travel, and food.  Such misuses of federal grant funds may result in violations of the FCA.

### II.    The CID

On May 20, 2024, the United States Attorney for the Northern District of West Virginia, a designee of the Attorney General under 31 U.S.C. 3733, issued the CID to Dunbar Stop, care of Hodges.  (Ex. 1.)  The CID, which was issued pursuant to the FCA, stated that "[t]he [FCA] investigation concerns allegations that individuals and entities, known and unknown to the Government, submitted false claims, either directly or indirectly, to the U.S. Government.  (*Id.* at

1.)

The CID required Dunbar Stop to produce documents and answer interrogatories. (*Id.* at 2.)  In Attachment B, the CID included twelve demands for documents that described with specificity the materials to be produced.  (*Id.* at 10.)  In Attachment C, the CID set forth with specificity sixteen interrogatories to be answered.  (*Id.* at 11-13.)  The demands and interrogatories prescribed a twenty-day return date from the receipt of the CID.  (*Id.* at 2.)  The undersigned and Gwendolyn R. Grove, an investigation at the West Virginia Department of Health, were the designated FCA investigators to receive documents and answers to interrogatories.  (*Id.* at 1-2.)

### III.    Dunbar Stop's Failure to Respond

After Dunbar Stop received the CID, Hodges contacted the United States Attorney's Office.  On June 13, 2024, the United States agreed to extend Dunbar Stop's response deadline to July 15, 2024. (Ex. 2 at 6.)  On July 15, 2024, Hodges requested an extension until July 30, 2024, stating that "[c]ompiling the vast amount of information, delays in receiving the requested information and the holiday have caused the original timeline to be delayed." (*Id.* at 5.)  The United States agreed but stated that no further extensions would be granted.  (*Id.* at 4.)

On July 22, 2024, Hodges stated that a request pursuant to the Freedom of Information Act to the West Virginia Department of Health had been delayed until August 25, 2024.  (*Id.* at 3-4.) She stated that the task of responding the CID "has become overwhelming" and requested assistance in obtaining the information from the West Virginia Department of Health.  (*Id.* at 4.) In response, the United States requested that Hodges provide the information that she had by July 30, 2024, and then supplement the same after the FOIA request had been returned.  (*Id.* at 3.)

Hodges did not make a production by July 30, 2024, and did not return calls made by the

United States.  On September 11, 2024, the United States advised Hodges that it would be forced to file a motion to enforce the CID if it did not receive a status update.  (*Id.* at 2-3; Ex. 3.)  On September 16, 2024, Hodges advised that she was working on arrangements with her attorney, who would contact the United States by September 20, 2024.  (Ex. 2 at 1-2.)

On September 20, 2024, First Assistant Federal Public Defender Richard Walker left a voicemail for the undersigned.  When the two spoke the following week, Walker inquired whether Hodges would be criminally prosecuted.  The undersigned explained that the United States cannot disclose such information and that Dunbar Stop's response to the CID was needed to continue the investigation.  Walker advised that he could not represent Hodges unless she was being criminally prosecuted and requested an update if anything changed.  Since speaking with Walker, the United States has heard nothing further from Hodges and still has not received a response to the CID.

## ARGUMENT

### I.    The CID is Enforceable

The CID should be enforced because all standards for an administrative subpoena have been satisfied.  *See, e.g., In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98-19*, 182 F.R.D. 196, 201 (E.D. Va. 1998) ("[A] CID is an administrative subpoena."); *United States v. Sentara Healthcare*, No. 3:23-MC-7, 2024 U.S. Dist. LEXIS 41102, at *6 ("Courts treat CIDs as if they were administrative subpoenas.").  In the Fourth Circuit, the scope of judicial review in an administrative subpoena enforcement proceeding is "'sharply limited.'" *Sentara Healthcare*, 2024 U.S. Dist. LEXIS 41102, at *6 (quoting *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 82 (4th Cir. 1995)).  Enforcement of an administrative subpoena is proper if the administrative agency shows that "(1) it is authorized to make such

4

investigation; (2) it has complied with statutory requirements of due process; and (3) the materials requested are relevant." *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 113 (4th Cir. 1997).  If the three factors are satisfied, then the subpoena should be enforced, "unless the party being investigated demonstrates that the subpoena is unduly burdensome." *EEOC v. Randstad*, 685 F.3d 433, 442 (4th Cir. 2012).

### A.      Congress Granted the United States Authority to Investigate

Congress granted the United States Attorney General the authority to investigate potential violations of the FCA.  The FCA provides civil remedies to the United States against "all fraudulent attempts to cause the Government to pay out sums of money." *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968).  Here, the Attorney General is investigating whether Dunbar Stop violated the FCA by misusing federal grant funds for nepotism, excessive executive salaries and bonuses, ATM withdrawals, luxury vehicle rentals, travel, and food.

The FCA permits "the Attorney General, or a designee" to issue CIDs to investigate potential FCA violations.  31 U.S.C. § 3733(a)(1).  The United States Attorney for the Northern District of West Virginia, who issued the CID, is a designee under the FCA.  *See* 28 C.F.R. § 0.168, Supt. Y, App., Section 1(c)(2); Section 5.

### B.      The United States Followed All Procedural Requirements for the CID

The CID complies with all applicable statutory requirements for documentary material and interrogatories. The CID "state[s] the nature of the conduct constituting the alleged violation of a false claims law which is under investigation, and the applicable provision to be violated.  31 U.S.C. § 3733(a)(2)(A).  The CID states that "[t]he [FCA] investigation concerns allegations that individuals and entities, known and unknown to the Government, submitted false claims, either

5

directly or indirectly, to the U.S. Government. (Ex. 1 at 1.)

In Attachment B, the CID included twelve demands for documents that described with specificity the materials to be produced. (*Id.* at 10.) In Attachment C, the CID set forth with specificity sixteen interrogatories to be answered. (*Id.* at 11-13.) The demands and interrogatories prescribed a twenty-day return date from the receipt of the CID. (*Id.* at 2.) The undersigned and Gwendolyn R. Grove, an investigation at the West Virginia Department of Health, were the designated FCA investigators to receive documents and answers to interrogatories. (*Id.* at 1-2.)

### C.      The CID Seeks Evidence Relevant to the Investigation

The CID seeks evidence relevant to the United States' investigation whether Dunbar Stop knowingly submitted false claims by misusing federal grant funds. Relevancy is "not especially constraining" and is determined "in terms of the investigation rather than in terms of evidentiary relevance." *Lockheed Martin Corp.*, 116 F.3d at 113 (internal quotations omitted). The term "relevant" is "generously construed," and "[c]ourts defer to an agency's own appraisal of what is relevant so long as it is not obviously wrong." *Id.* (internal quotations omitted).

Here, the CID seeks evidence that is relevant to establishing whether Dunbar Stop knowingly misused federal grant funds. 31 U.S.C. § 3729(a)(1), (b)(1). To this end, the CID requests the production of financial documents, such as checking and savings account monthly statements, documentation of program purchases, payroll statements and time sheets for employees, expenditure receipts, and trip logs. (Ex. 1 at 10.) In addition, the CID's interrogatories seek information regarding cost breakdowns, community outreach programs, employee bonus information, and the location of items that had been purchased by Dunbar Stop. (*Id.* at 11-13.) Interrogatory Nos. 1-4 seek information identifying Dunbar Stop's employees and familial

relationships between the employees. (*Id.* at 11.)   Each request included in the CID is directly relevant to the United States' pending FCA investigation.

## II.   Dunbar Stop's Refusal to Comply with the CID Lacks Merit

In the Fourth Circuit, "the burden of proving that an administrative subpoena is unduly burdensome is not easily met." *NLRB v. Carolina Food Processors*, 81 F.3d 507, 513 (4th Cir. 1996) (internal quotations omitted).   To meet its burden, "[t]he party subject to the subpoena must show that producing the documents would seriously disrupt its normal business operations." *Id.* (internal quotations omitted).

In July 2024, Hodges represented that information was being loaded onto a one-terabyte external drive for production. (Ex. 2 at 5.)   In September 2024, Hodges stated that the delay was caused, in part, by "the massive amount of documentation." (*Id.* at 2.)   It is well settled that "a subpoena is not unduly burdensome merely because it requires the production of a large number of documents." *Carolina Food Processors*, 81 F.3d at 513.   The Fourth Circuit further explained that "[t]he mere fact that compliance with the subpoenas may require the production of thousands of documents is . . . insufficient to establish burdensomeness." *Id.* (internal quotations omitted). Here, the United States attempted to relieve any burden of producing voluminous documents by requesting that Dunbar Stop produce what was available by July 30, 2024, and then supplement the production. (Ex. 2 at 3.) Despite providing this accommodation, Dunbar Stop has not produced *any* documents or responded to *any* of the interrogatories.   The United States' document requests and interrogatories are tailored to the evidence needed to continue the investigation.   Moreover, responding to the CID will not disrupt Dunbar Stop's normal business operations because it ceased operations in June 2023.   Accordingly, Dunbar Stop will be unable to meet its burden to prove that

responding to the CID is unduly burdensome.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court grant its

Motion and order Dunbar Stop to respond to the CID within fourteen days.

Dated: October 16, 2024                            Respectfully submitted,

                                                 FOR THE UNITED STATES OF AMERICA

                                                 WILLIAM IHLENFELD
                                               United States Attorney

By:    */s/ Stephanie K. Savino*
          Stephanie K. Savino
          Assistant United States Attorney
          WV Bar No. 13684
          United States Attorney's Office
          P.O. Box 591
          Wheeling, WV 26003
          Phone:  (304) 234-0100
          Fax:  (304) 234-0112
          E-mail: Stephanie.K.Savino@usdoj.gov